Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3909 | **DATE** | 12/11/2003 |
| **CASE TITLE** | In Re: Natl Proc Co LLC | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] This matter is before the court on appellants' appeal from Chief Bankruptcy Judge Wedoff's denial of appellants' motion for an order deeming an agreement between appellants and appellees to be a financial accommodation. This matter is also before the court on appellants' appeal from Chief Judge Wedoff's denial of appellants' motion in the alternative to require adequate assurance of future performance. For the reasons stated on the attached memorandum opinion, this Court hereby affirms all of Chief Judge Wedoff's rulings that are challenged in the instant appeal. Enter Memorandum Opinion. Terminating case.

(11) ■ For further detail see Memorandum Opinion attached to the original minute order.

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 12 2003 date docketed | |
| ✓ | Docketing to mail notices. | | 9 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom MW deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **UAL CORPORATION, ET AL.,** | ) | **Case No. 02-B-48191** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | |
| **NATIONAL PROCESSING COMPANY, LLC and NATIONAL CITY BANK OF KENTUCKY,** | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **No. 03 C 3909** |
| | ) | |
| **UAL CORPORATION, et al.,** Debtors, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on appellants' appeal from Chief Bankruptcy Judge Wedoff's denial of appellants' motion for an order deeming an agreement between appellants and appellees to be a financial accommodation. This matter is also before the court on appellants' appeal from Chief Judge Wedoff's denial of appellants' motion in the alternative to require adequate assurance of future performance. For the reasons stated below we affirm all of Chief Judge Wedoff's rulings that are challenged in the instant appeal.

1

## BACKGROUND

In November of 2000 appellants National Processing Company, LLC and The National City Bank of Kentucky (collectively referred to as "NPC") entered into a Charge Card Processing Agreement ("Charge Agreement") with appellee United Airlines and its affiliates (collectively referred to as "Debtors"). Under the Charge Agreement NPC agrees to process VISA and Mastercard transactions involving the purchase of airline tickets from Debtors. NPC also agrees to give Debtors' customers a money-back guarantee. Debtors promised in turn to honor valid VISA and Mastercards used by customers and Debtors agreed not to use any other source for its U.S. VISA and Mastercard transaction processing.

On December 9, 2002, Debtors filed Chapter 11 bankruptcy petitions and on that same day Debtors filed a motion for the entry of an order authorizing Debtors to assume certain executory credit card agreements. The bankruptcy court granted the assumption motion on December 11, 2002, but allowed affected credit card companies to object within twenty days.

On February 28, 2003, NPC filed a motion with the bankruptcy court requesting that the bankruptcy court declare the Charge Agreement to be a financial accommodation and hold that an assumption of the agreement by Debtors is barred under section 365(c)(2) of the Bankruptcy Code ("Section 365(c)(2)"). 11 U.S.C. § 365(c)(2). NPC also requested as an alternative that the court order Debtors to provide adequate assurance of future performance. Chief Judge Wedoff held that the Charge Agreement is not a financial accommodation and that Debtors are not required to provide NPC with adequate assurance of future performance. Chief Judge Wedoff also stated that NPC's risk of loss in light of the current bankruptcy proceedings is not relevant to the financial accommodation determination or to the adequate assurance

determination. Chief Judge Wedoff allowed Debtors to assume the Charge Agreement and NPC is now before us appealing the bankruptcy court's ruling.

## LEGAL STANDARD

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. On the appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *In re A-1 Paving and Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir. 1997).

## DISCUSSION

NPC argues that the bankruptcy court erred when it held that the Charge Agreement is not a financial agreement and thus the court erred when it allowed Debtors to assume the agreement. NPC also argues that the bankruptcy court erred in holding that the risk of loss to NPC is not relevant to the determination of whether or not Debtors can assume the Charge Agreement. NPC also argues that the bankruptcy court should have considered NPC's risk of loss and, in light of that risk, it should have ordered Debtors to provide adequate assurance of future performance.

### I. Whether the Charge Agreement is a Financial Accommodation

Section 365(c) of the Bankruptcy Code states that "[t]he trustee may not assume or assign any executory contract . . . if . . . such contract is a contract to make a loan, or to

3

extend other debt financing or financial accommodations, to or for the benefit of the debtor . . . ." 11 U.S.C. § 365(c)(2). The term "financial accommodation" does not include "all contracts that involve the extension of credit." *See Citizens & So. Nat'l Bank v. Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013, 1018-19 (11th Cir. 1992)(stating that the courts narrowly construe the term "financial accommodation" because many agreements involve the extension of credit and that the courts should be wary lest the "exception . . . swallow the rule."). A contract is deemed a financial accommodation if the primary purpose of a contract is the extension of credit. *Id.* at 1019. A contract is not a financial accommodation if "the extension of credit is only incidental to or a part of a larger arrangement involving the debtor . . . ." *Id.*

### A. Judge Wedoff's Primary Purpose Standard

NPC argues that under the Charge Agreement NPC is obligated to give customers purchasing Debtors' airline tickets a money-back guarantee. According to NPC, if Debtors cease operations, NPC will have to provide refunds for flights that were purchased ahead of time and NPC contends that it will not be compensated for the refunds. NPC argues that this risk of loss justifies deeming the Charge Agreement a financial accommodation.

NPC argues that Chief Judge Wedoff's ruling, finding that the Charge Agreement is not a financial accommodation, should be reversed because he used the phrase "the primary purpose." In *Hamilton* the court addressed the issue of whether an agreement was a financial accommodation and stated that courts "distinguish between contracts for which the extension of credit is the primary purpose, that is, a primary contractual obligation, and contracts in which the extension of credit is only incidental to or a part of the larger arrangement involving the debtor . .

4

. . ." 969 F.2d at 1019. NPC claims that Chief Judge Wedoff erred because he based his ruling on his finding that an extension of credit or financing is not *the* primary purpose of the Charge Agreement. NPC contends that because the court in *Hamilton* qualified the phrase "the primary purpose" by indicating that the phrase means "a primary contractual obligation," there can be more than one primary purpose under the legal standard. NPC contends that the proper standard is whether the extension of credit or financing is one of the primary purposes of the agreement rather than whether it is *the* primary purpose. NPC criticizes Chief Judge Wedoff for using what NPC deems an "all or nothing" standard.

First of all, we are mystified as to how Chief Judge Wedoff can be criticized for using the phrase "the primary purpose" when the court in *Hamilton* used the same phrase or at least a similar phrase itself repeatedly. In fact, in addition to using the phrase in the above mentioned quotation, the court states further on in the opinion: "On the other hand, courts have held that loan commitments, guaranty and surety contracts, and other contracts, *the* principle purpose of which is to extend financing to or guarantee the financial obligations of the debtor, are contracts to extend financial accommodations . . . ." *Id.* at 1019(emphasis added). In addition, the court in *Hamilton* begins a review of the agreement at issue by stating: "If *the* purpose of the Agreement is to provide financing, then it is a contract to extend financial accommodations within the meaning of §§ 365(c)(2) and 365(e)(2)(B) . . . ." *Id.* at 1020(emphasis added). The court also quotes a case in footnote 13 which indicates that the proper standard is whether financing is "*the* purpose" of an agreement. *Id.* n.13 (quoting *In re Cole Brothers*, 137 B.R. 647, 652 (Bankr. W.D. Mich. 1992). The court in *Hamilton* concluded that the extension of credit or financing was not *the* primary purpose of the agreement at issue. *Id.* at 1020 (stating: "Thus, the purpose of

5

the Agreement is to establish a relationship that will permit Hamilton to accept the use by customers of credit cards instead of cash in the course of its business . . . [and thus i]ts purpose is not to provide financing.").

NPC also accuses Chief Judge Wedoff of creating a new standard and contends that the standard used in *Hamilton* was whether or not financing was an incidental part of the agreement. NPC contends that whether or not financing was the principle purpose of the agreement was not part of the standard. However, NPC is mistaken. In beginning its review of the agreement at issue the court stated: "If *the purpose* of the Agreement is to provide financing, then it is a contract to extend financial accommodations within the meaning of §§ 365(c)(2) and 365(c)(2)(B) . . . [but,] on the other hand, if the Agreement establishes a contractual business relationship and any financing that is a part of this relationship is only incidental to the relationship, then the Agreement does not fall within the ambit of §§ 365(c)(2) and 365(c)(2)(B)." *Id.* at 1020(emphasis added).

Even if NPC correctly interprets the standard used in the *Hamilton* case, it is clear from the opinion of Chief Judge Wedoff that he did not find the extension of credit or financing to be *the* primary purpose or *a* primary purpose of the Charge Agreement. NPC also makes broad claims about the bankruptcy court's ruling such as claiming that "[a]ccording the Bankruptcy Court, an agreement can have only one purpose." However, nothing in Chief Judge Wedoff's opinion states that premise and NPC does not provide a citation indicating where in the opinion such an assertion is made. Nor does NPC provide a citation to the opinion for its claims that the court used an "all-or-nothing test."

## B. Relevance of Risk to Financial Accommodation Determination

NPC also argues that Chief Judge Wedoff erred when he refused to consider NPC's risk of loss in light of the possibility that Debtors may cease operations. NPC claims that Chief Judge Wedoff reviewed the Charge Agreement and refused to consider evidence pertaining to NPC's risk. In *Hamilton* the court mentioned the possible relevance of risk, but it did so in interpreting the language of Section 365(a) which states that a trustee may assume an executory contract "subject to the court's approval." 11 U.S.C. § 365(a); 969 F.2d at 1021. In *Hamilton* the court in mentioning risk was not addressing Section 365(c) which indicates that a trustee cannot assume an agreement that is a financial accommodation. 11 U.S.C. § 365(c)(2). Thus, NPC's degree of risk is immaterial to the financial accommodation determination.

## II. Relevance of Risk to Adequate Assurance

NPC also argues that Chief Judge Wedoff erred in refusing to consider NPC's risk of loss when Chief Judge Wedoff held that NPC is not entitled to adequate assurance of future performance. Section 365 states that "[i]f there has been a default in an executory contract . . . the trustee may not assume such contract . . . unless, at the time of assumption of such contract . . . the trustee . . . provides adequate assurance of future performance under such contract . . . ." 11 U.S.C. § 365(b)(1)(C). After reviewing the parties' stipulated facts, Chief Judge Wedoff concluded that there is no evidence that Debtors were ever in default in regards to the Charge Agreement and held that Debtors are not required to provide adequate assurance of future performance to NPC. NPC contends that the court in *Hamilton* considered risk. However, as stated above, the court mentioned the potential relevance of risk when addressing Section

7

365(a) not when addressing the language of Section 365(b)(1)(C) which dictates when adequate assurance of future performance is required. 969 F.2d at 1021.

III. Relevance of Risk To Approval of Assumption

NPC also argues that Chief Judge Wedoff should have considered NPC's risk in a general sense and should have denied the assumption of the Charge Agreement based on that risk. In *Hamilton* the court addresses Section 365(a) which indicates that a trustee can assume an executory contract "subject to the bankruptcy court's approval." 11 U.S.C. § 365(a); 969 F.2d at 1021. The court mentions that it would not be appropriate to approve an assumption of an agreement if continued performance would place a party in an unreasonably risky position. 969 F.2d at 1021.

Although NPC asserts that Chief Judge Wedoff held that risk was not relevant to the financial accommodation determination, which is true, there is no indication that he did not consider risk in the broader sense when deciding whether to approve the assumption of the Charge Agreement. Also, even if Chief Judge Wedoff did not consider NPC's risk, we cannot find fault with his ruling for a variety of other reasons. First of all, *Hamilton* is not controlling authority. It is merely persuasive authority. Second, Section 365(a) merely states that assumption of an agreement is "subject to the bankruptcy court's approval." 11 U.S.C. § 365(a). This language of Section 365(a) indicates that a bankruptcy court has discretion to apply its own reasonable standard in order to decide whether to grant approval. The section makes no reference to considering a party's risk and thus Judge Wedoff was not obligated to do so.

Third, the court in *Hamilton* only mentioned the relevance of risk in dicta. In *Hamilton*

the court focused on Section 365(c) and concluded that the agreement at issue was not a financial accommodation and then proceeded to make some general comments about the provisions of the Bankruptcy Code and mentioned the possible relevance of risk in certain instances. Thus, Chief Judge Wedoff was not mandated to consider NPC's risk and he did not err in that respect.

In addition, even if Chief Judge Wedoff were to consider NPC's risk, the ultimate result would be the same in this case. NPC apparently contends that the consideration of a party's risk should be the controlling factor in the court's analysis of whether or not to approve an assumption of an agreement. However, even when reading *Hamilton* liberally, the court does not indicate that risk is relevant to the extent that NPC desires. The court in *Hamilton* clearly indicates that approval of an assumption of an agreement should be denied based on risk only in exceptional circumstances, not simply because the debtor is involved in bankruptcy proceedings and there is a risk that the debtor will cease operations and a party to an agreement with the debtor will lose funds. This is clear from the various points in *Hamilton* where the court expresses its concern that assumption be denied only in limited instances. For example in *Hamilton* the court stated:

> The Agreement at issue here is typical of credit card merchant agreements between all kinds of merchants and merchant banks. If these agreements may not be assumed by the trustee following a bankruptcy filing, rehabilitation will be virtually impossible for any merchant who relies heavily on credit card sales.

*Id.* at 1020. Whenever, a debtor is embroiled in bankruptcy proceedings there is an enhanced degree of risk for those that contract with the debtor and whenever parties enter into a credit card processing agreement and there are potential customers that will be entitled to refunds there is a degree of risk involved. However, *Hamilton* makes it clear that only exceptional circumstances,

9

such as when the debtor is involved in fraud, will risk justify a court's denial of an assumption by the debtor. *Id.* at 1021. Chief Judge Wedoff recognized this policy in *Hamilton* and quoted the above passage in his own opinion. In this case, there are not exceptional circumstances which would warrant a denial of the assumption of the Charge Agreement by the Debtors . Thus, even if NPC could show that Chief Judge Wedoff did not consider NPC's risk, Chief Judge Wedoff's rulings were correct because the ultimate result would be the same if he had considered risk.

## CONCLUSION

Based on the foregoing analysis, we affirm all the rulings made by Chief Judge Wedoff that are challenged in the instant appeal.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 11, 2003